# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

RICKY SOUTHARD and )
STACY SOUTHARD, )
)
    Plaintiffs, )
)
v. ) Case No. CV411-243
)
STATE FARM FIRE )
AND CASUALTY CO., )
)
    Defendant. )

## ORDER

Another discovery dispute has arisen in this breach of insurance contract case. *See* doc. 54 (resolving earlier dispute), *reported at* 2012 WL 1951652.[1] This time, defendant State Farm Fire and Casualty Co. asks the Court to quash plaintiffs' Fed. R. Civ. P. 30(b)(6) deposition notice and document request on relevancy grounds. Doc. 61. Plaintiffs Ricky and Stacy Southard are homeowners who

> reported water damage in their home . . . to [the] State Farm agent who had sold them a homeowners' insurance policy. Their

---

[1] All documents referenced in this Order use the electronic screen-page pagination printed across the top of each page by the Court's CM/ECF software. Those page cites may not always line up with each paper-document's printed pagination.

> State Farm agent referred [them] to Mock Construction, which came to the house on the 14th, found a slab leak in the kitchen and stopped [it]. Mock Construction and its sister company[,] Serclean[,] placed air blowers and fans in the home and began preliminary remediation. Mock Construction/Serclean contacted Arthur Martin, an industrial hygienist, to provide a protocol for remediation.

Doc. 49 at 4 (plaintiffs' recitation of this case). Other remediation efforts were made. *Id.* State Farm brought in a second-opinion consultant who concluded that only mold, but not also bacteria, was present. Doc. 62 at 3 ¶ 4; doc. 68-3 at 27; 61-1 at 11. Conceding partial coverage, State Farm determined "that [a] broken pipe caused water and mold damage," but not as much as plaintiffs claimed. Doc. 49 at 5. So, it only partly paid out on plaintiffs' claim. *Id.*; *see also* doc. 61-1 at 2 ("State Farm denied additional coverage for remediation, applying the fungal (including mold) policy limit of $10,000."); doc. 10 at 4-5.

The parties' dispute is over bacteria. Doc. 70. Bacteria, caused by the water leak, had to be detected or else the policy's $10,000 mold (or "fungal") contamination limit applied. Doc. 71 at 44-49; doc. 71-1 at 19-22, 36, 39, 49-50. If detected, a higher coverage amount would be triggered for more expensive remediation. Doc. 71-1 at 49-50; doc.

71-2 at 1, 5-6, 12-14, 25, 27-28, 29-30, 31-32, 36, 37, 38, 47-40. Plaintiffs say bacteria was present, while State Farm says not (it is undisputed that bacteria is *always* present in homes but only some strains, as tied to a covered occurrence, trigger coverage). Doc. 71-2 at 49; doc. 72 at 1, 10-11, 14-15; *see also id.* at 16 (there was some bacteria but it was not caused by the water loss), 23-24 (same), 26-28 (same); 33 ("The initial facts of loss stated that this was a slab leak and it's not our experience that a slab leak results in bacteria."). The Southards thus sued State Farm for, *inter alia*, breach of insurance contract (doc. doc. 10) but a summary judgment ruling has pared their case down to breach of contract plus O.C.G.A. §33-4-6(a) bad-faith damages. Doc. 56.

The Southards want to see four other State Farm, water-leak claim files in which their remediation men, Mock and Martin, participated. Doc. 61-1 at 2, 10-11 (seeking info on mold-claim denials); doc. 61-3; doc. 64-1 at 3-6; *see also* doc. 62 at 3 ¶ 5 (noting that all those cases involved Mock and Martin, mold/bacteria claims fully paid out by State Farm); doc. 62 at 13 (describing the files and noting that the names of policy holders could be redacted). They want

to know whether State Farm handled their claim differently from the preceding four, and thus whether State Farm deviated from its usual custom and practices -- a bad faith marker. Doc. 62 at 4.

The Southards also want to review State Farm's "Engineering Firm Selection Applications" to learn "what type of information was in the list." Doc. 61-1 at 3-4; doc. 62 at 13; doc. 64 at 10.[2] And, they want to know how much State Farm has paid Mock, Serclean, and Martin (hence, they want the IRS 1099 forms that State Farm has issued to them) for such claims over a specified time period.[3] Doc. 62 at 13-14; doc. 64 at 11-12.

State Farm says that the "similar claims" discovery is irrelevant because this is only a mold, *not* a mold/*bacteria* case, so the four claims files the Southards want are not "similar." And just because the Southards say they had bacteria does not mean it's true. Doc. 61-1 at 5-6; doc. 64 at 5-6. In fact, says State Farm, plaintiffs' own tests

---

[2] The Court grants State Farm's motion on this point. State Farm says it disclosed to plaintiffs that neither Mock nor Martin appear in the Selection Applications. Doc. 61-1 at 4; *see also id.* at 7 (it points out that neither of them are engineers, and the parties did not hire any in this case). Plaintiffs would still like to see what types of engineers were on the list. Doc. 62 at 5. But they fail to show sufficient relevancy -- how that information would lead to the discovery of admissible evidence.

[3] That matter is now moot because State Farm has supplied that information. Doc. 64 at 11-12; *see also* docs. 62 & 70 (plaintiffs do not further pursue it in their briefs). Hence, the Court grants State Farm's motion on this point, too.

4

showed "negative" for bacteria in their home. Doc. 64 at 7; *see also id.* at 8 (for a while those tests were concealed both from plaintiffs and State Farm). So, State Farm concludes, the plaintiffs have no good relevancy argument for discovering how State Farm has adjusted the four prior mold-*bacteria* claims. *Id.*; *see also* doc. 64 at 6 ("Therefore, there is simply no threshold for relevancy between Plaintiffs' claim and these other claims.").

Parties may discover "any nonprivileged matter that is relevant to any party's claim or defense," Fed.R.Civ.P. 26(b)(1), and upon a good-cause showing, "any matter relevant to the subject matter" of the litigation. *Id.*; *see Siddiq v. Saudi Arabian Airlines Corp.*, 2011 WL 6936485 at * 2 (M.D. Fla. Dec. 7, 2011). Proponents must show relevance. *Zorn v. Principal Life Ins. Co.*, 2010 WL 3282982 at *2 (S.D. Ga. Aug. 8, 2010). The information need not be admissible at trial, only "reasonably calculated to lead to the discovery of admissible evidence." *Id.*[4]

---

[4] The relevancy showing

progresses in layers. When the discovery sought appears relevant on its face, the party resisting it must show the lack of relevance by demonstrating that it: (1) does not come within the broad scope of relevance as defined under discovery rule; or (2) is of such marginal

A party from whom discovery is sought may move for a protective order if it shows good cause "to protect [that] party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *Southard*, 2012 WL 1951652 at * 2 n. 3. Requests for plainly irrelevant information are objectionable.

But the relevancy standard for discovery is not the same as for at-trial evidence. For discovery it is more liberal, though not a fishing license. *Ariel Preferred Retail Group, LLC. v. CWCapital Asset Management,* 2012 WL 1620506 at * 3 (E.D. Mo. May 9, 2012); *Hurley v. State Farm Mut. Auto. Ins. Co.,* 2012 WL 1600796 at * 2 (D.S.D. May 7, 2012). In insurance cases, for example, bad-faith claimants have been permitted to discover system-based background information like how an insurer trains its employees to minimize losses while adjusting claims, or the reserves that it sets for them.[5]

---

relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure. When the relevancy of a discovery request is *not* apparent on the face of the request, then the party seeking the discovery has the burden to show its relevancy. *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003).

*Zorn*, 2010 WL 3282982 at * 2 (emphasis added).

[5] *See Kirschenman v. Auto-Owners Ins.*, ___ F.R.D. ___, 2012 WL 548857 at * 8-9 (D.S.D Feb. 21, 2012) (information relating to property insurer's cost containment, profitability, and loss ratios was relevant to issue of whether property insurer had

And some courts have allowed discovery of "evidence of the [insurer's] practices concerning and its treatment of similar claims." *Parkdale America, LLC v. Travelers Casualty and Surety Co. of Am.*, 2007 WL 3237720 at * 5 (W.D.N.C. Oct. 30, 2007) (antitrust insurance coverage case), *cited in Westport Ins. Corp. v. Wilkes & McHugh, P.A.*, 264 F.R.D. 368, 372-73 (W.D. Tenn. 2009) (in insurer's action to determine coverage of legal malpractice policy, insured law firm's request for discovery of insurer's handling of other policyholders' claims was reasonably calculated to lead to admissible evidence relevant to firm's state law counterclaim alleging unfair trade practices as required for motion to compel; scope of discovery was limited to preceding five years,

---

engaged in bad faith or unfair trade practices under South Dakota law, and thus discoverable, in mold-claim insureds' action alleging insurer's breach of contract, bad faith refusal to pay insurance benefits, and unfair trade practices; insured sought video clips from company's presentations to employees on how to reduce costs and expenses, documents from team assigned to reduce company expenses, and information relating to how company set its loss adjustment expense goals, all which would tie actions of insurer in the handling of insured's specific claim to a larger company pattern aimed at reducing expenses and increasing profits); *Jefferson Davis County School Dist. v. RSUI Indem. Co.*, 2009 WL 1658478 at * 3 (S.D. Miss. Jun. 11, 2009) (upholding claimant's quest for information and documents relating to the setting of reserves for its claim; reserve information is discoverable -- especially where a plaintiff has asserted a bad faith claim -- because the insurer's estimate of the plaintiff's claim may be relevant to a finding of bad faith) (collecting cases), cited in *Henderson v. Liberty Mut. Ins. Co.*, 2012 WL 1900130 at * 2 (S.D. Miss. May 24, 2012).

which would avoid excessive burden on insurer). Others not.[6]

Plaintiffs' quest for similar mold/bacteria claims must be viewed in context of the facts spread throughout the record. They insist that State

---

[6] Those cases have been collected by this encyclopedic source:

> *See, e.g., Moses v. State Farm Mut. Auto. Ins. Co.*, 104 F.R.D. 55, 57 (N.D. Ga. 1984) ("Defendants' conduct regarding the insurance claims of others is of no consequence to this case"); *Monsanto Co. v. Aetna Cas. and Sur. Co.*, 1993 WL 542399 (Del. Super. Ct. 1993), *judgment aff'd*, 653 A.2d 305 (Del. 1994) ("there are simply too many variables to render the information relevant or meaningful"); *First Fidelity Bancorporation v. National Union Fire Ins. Co. of Pittsburgh, PA.*, 1992 WL 55742 (E.D. Pa. 1992) ("[T]he scope of this discovery request [for other claims files] far exceeds what would be reasonably admissible under Fed. R. Evid. 406. This is especially so considering [the insurer's] understandable desire to have a 'mini-trial' over each and every instance of bad faith claimed by [the insured]").

2 INSURANCE CLAIMS AND DISPUTES 5TH § 9:21A (Mar. 2012). This source cites pro-discovery cases, too. *Id.*, n.1. It notes that:

> [a] few courts have allowed discovery regarding other claims arising under similar policy wording, particularly where the information sought is limited to the type of claim asserted in the coverage litigation. Such rulings are not justifiable. Either the policy language is ambiguous or it is not. If it is ambiguous, the other claims files are irrelevant to the insured's case. And if the policy language is not ambiguous, the other claim files cannot change that fact.

*Id.* (footnotes omitted); *see also St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 197 F.R.D. 620, 643-45 (N.D. Iowa 2000) (information regarding other "bad faith" claims against insurer was not relevant, and thus, not discoverable by insured, which asserted "first-party" bad faith counterclaim under Iowa law, since insurer actually relied upon certain ground for denying the claim rather than denying claim pursuant to systematic scheme to rescind policies when claims were made without investigating whether there was good cause to do so; furthermore, assuming that evidence of other bad faith claims was somehow marginally relevant to the bad faith claim, discovery of information regarding such claims would be unduly burdensome in relation to the likely benefits), *cited in* 54 No. 1 DRI FOR DEF. 36 (Jan. 2012) (collecting cases).

8

Farm's representative admitted that *if* bacteria was found in their home, they would receive the higher limits coverage under the subject policy. Doc. 70 at 1. They are correct. But the very deposition pages that they cite show State Farm's position that yes, bacteria was found but no, it was *not* related to the water-leak that caused their claim.

Next, plaintiffs tender Mock principal Alan Mock's affidavit in support of their discovery, doc. 62-1, but he simply does *not* attest that he found bacteria in the Southard home. However, his subcontractor -- Martin -- also was deposed. While he found no bacteria on the first round of testing that he performed at the Southards' home (possibly, he says, because Mock had applied biocide and cleaned the area up before Martin got there), he later found bacteria on a follow-up test, though *perhaps* not enough to definitively support a claim. Doc. 68-3 at 22-3, 30 (conceding he initially tested for but found no bacteria); doc. 68-3 at 11; doc. 68-2 at 16-17, 20-23, 26, 38-40, 43; *see also* 68-2 at 48-49 (acknowledging that he advised different remediation for claims where bacteria was and was not present, and conceding that none was initially present for the Southard's home); doc. 68-3 at 2 (admits he had no initial test showing bacteria); doc. 68-3 at 50 (but he says a later test showed

bacteria present); doc. 68-3 at 40-41 (still, he conceded that such bacteria is present everywhere, so it was not dispositive here); *id.* at 42 (yet, based on the second-test results he told Mock "to go ahead with taking up [the leak-affected] floor and treat[ it] with some kind of biocide. . . ."); *id.* at 43 (nevertheless he concedes the second test results he obtained said nothing of the bacteria's source); *id.* at 43-44 (nor did he determine whether the bacteria was "pathogenic"); doc. 68-4 at 6 (he concedes that that it "would be difficult" to link the bacteria to the broken pipe because the bacteria could come from any source).

No doubt the Court would find the Martin testimony tenuous were it resolving this case on the merits, but plaintiffs properly remind the Court that the discovery standard is more liberal than the at-trial evidence standard. And State Farm, they say, has "repeatedly implied" that Mock and Martin, "conspired to unduly enhance the expense of Plaintiffs' damages in an effort to create a more expensive claim." Doc. 62 at 8.[7] So plaintiffs want to see the prior claims documents to "show any differences" between State Farm's handling of these claims, where

---

[7] State Farm does not concede this, but notes that "during the pendency of the claim and initial discovery stage, Martin's negative bacteria test results were concealed from Plaintiffs and from State Farm." Doc. 64 at 8.

the company paid out on them despite Mock and Martin's involvement. *Id.* at 8. State Farm stands on its contention that no facts place this case in the mold/bacteria realm, so no discovery into prior mold/bacteria cases is justified. Doc. 64 at 12.

While the question is reasonably close,[8] the ruling must tilt in favor of the Southards. "[S]howing that a matter is not relevant during the early stages of a lawsuit is a difficult task because almost everything is relevant in the discovery process," *Jones v. Forrest City Grocery Inc.*, 2007 WL 841676 at *1 (E.D. Ark. Mar. 16, 2007), as evidenced by the weight of the foregoing cases granting similar-past-claims discovery in broader categories than discussed here (i.e., mold/bacteria claims). Discovery, after all, "is not limited to issues raised by the pleadings, because it is designed to help define and clarify these issues; and, discovery is not limited to the merits of a case, because facts may come to light that are not anticipated and are not related to the merits." *Id.* (footnote omitted); *see also id.* at * 2 ("The claim of this lawsuit is race discrimination. Any past conduct, policies, or practices of the Defendants that tend to show that race was a motivation is relevant.").

---

[8] Hence, the Court denies State Farm's request for attorney fees and costs. Doc. 61-1 at 17.

Here the request extends to just the four "Mock/Martin mold cases" in question, not "all" prior bad-faith cases or some similar open-ended request. It is not beyond the realm of possibility that in at least one of the prior mold/bacteria cases State Farm or a claimant's agent conducted a follow-up test, then altered the claim's disposition in a manner relevant to the way the contract performance (and, in turn, any bad-faith conduct,) unfolded in this case. And plaintiffs are correct that State Farm is essentially misapplying the at-trial relevance standard here; the proper standard is more akin to citing inferential smoke that *could reasonably* lead to fire. Too, plaintiffs seek no massive data dump, just four "3-M" (Mold, Mock and Martin) files.

Subject to a protective order (the parties shall promptly confer) guarding past claimants' identities, State Farm shall disclose the four prior claims files identified by the Southhards. *See* doc. 62 at 13. Plaintiffs also shall be entitled to depose a State Farm Rule 30(b)(6) representative about those files. The Court otherwise **GRANTS** the remainder of State Farm's motion for a protective order. Doc. 61.

**SO ORDERED** this 14th day of June, 2012.

UNITED STATES MAGISTRATE JUDGE
**SOUTHERN DISTRICT OF GEORGIA**

12