UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

RICKY SOUTHARD and STACY SOUTHARD,

Plaintiffs,

v.                    4:11-cv-243

STATE FARM FIRE AND CASUALTY COMPANY,

Defendant.

## ORDER

Before the Court are several pending motions, including Defendant State Farm Fire & Casualty Company's ("State Farm") motion to exclude David Capasso as an expert witness, ECF No. 76; its motion for summary judgment, ECF No. 75; its motion to strike the affidavits attached to the Southards' brief responding to State Farm's motion for summary judgment, ECF No. 145; and Plaintiffs Ricky and Stacy Southards' motion in limine to exclude certain opinions of Elizabeth Witten, expert witness for State Farm. ECF No. 153.

## I. BACKGROUND

State Farm issued the Southards a homeowner's policy covering their property in Savannah, Georgia. *See* ECF No. 15-3 at 3. On September 13, 2010, a plumbing pipe burst in the foundation slab of the Southards' home, causing damage. *See* ECF Nos. 15-2 at 1; 23 at 1. The Southards filed a claim with State Farm. *See* ECF Nos. 15-2 at 2; 23 at 1. As a result of State Farm's investigation of the leak, State Farm issued $95,781.10 in indemnity payments to the Southards ($62,757.84 for water damage to real property; $12,433.93 for cleaning of personal property; $10,589.33 for additional living expenses; and $10,000.00 for mold remediation (per the policy limit)). ECF No. 154-1 at 2. State Farm denied coverage for additional remediation of fungal and mold damage beyond the policy limit of $10,000. ECF Nos. 15-2 at 2; 23 at 1. The Southards filed suit in Chatham County State Court, alleging claims of breach of contract, insurer bad faith, and seeking attorney fees. ECF No. 1 at 6-9. The Southards seek payment from State Farm for outstanding contractor invoices for bacterial remediation in the amount of $86,290.60 plus interest at 1.5% per month, $3,400.00 in additional living expenses incurred during the remediation, and statutory penalties and attorney's fees pursuant to O.C.G.A. § 33-4-6. ECF No. 154-1 at 2.

State Farm removed to this Court. *See* ECF. No. 1 at 1. The Southards obtained leave to file an amended complaint. *See* ECF Nos. 5; 9. In their amended complaint, the Southards alleged claims of breach of contract, negligence, insurer bad faith, and attorney fees arising out of State Farm's alleged mishandling of the insurance claim and failure to properly reimburse the Southards for costs incurred repairing water and mold damage to their home. *See* ECF No. 10.

State Farm moved for partial summary judgment on the Southards' claims for negligence and imputed negligence under O.C.G.A. § 51-2-1 and attorney fees under O.C.G.A. § 13-6-11, arguing that these claims failed as a matter of law. *See* ECF

Nos. 15; 15-1. The Southards consented, and the Court entered an order dismissing those claims, leaving only the Southards' breach of contract and O.C.G.A. § 33-4-6 claims pending. ECF No. 56.

On June 21, 2012, State Farm filed a motion to exclude David Capasso as an expert witness, ECF No. 76, and a motion for summary judgment. ECF No. 75. State Farm then moved to strike the affidavits attached to the Southards' brief responding to the motion for summary judgment. ECF No. 145. The Southards have since filed a motion in limine to exclude certain opinions of Elizabeth Witten, expert witness for State Farm. ECF No. 153.

Because State Farm's motion for summary judgment and related motion to strike hinge in part on the outcome of its motion to exclude Capasso as an expert witness, the Court addresses that motion first.

## II. STATE FARM'S REQUESTS TO EXCLUDE EXPERTS

State Farm argues that Capasso should be excluded as an expert witness pursuant to Federal Rule of Civil Procedure 37(c)(1) because the Southards failed to timely identify him and provide an expert report in compliance with Rule 26. ECF No. 76 at 1-2. State Farm further contends that even if the Court finds that Capasso should not be excluded as an expert for the foregoing reasons, his expert testimony should still be excluded pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *Id.* at 2-3. Because State Farm requests that Arthur Martin's affidavit—attached to the Southards' brief responding to State Farm's motion for summary judgment—be struck for the same reasons, the Court also addresses that argument herein. *See* ECF No. 145 at 17-22.

Federal Rule of Civil Procedure 26 provides in relevant part that "[i]n addition to the [initial] disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any [expert] witness it may use at trial." FED. R. CIV. P. 26(a)(2)(A). "[T]his disclosure must be accompanied by a written report—prepared and signed by the witness—*if* the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." FED. R. CIV. P. 26(a)(2)(B) (emphasis added). However, for expert witnesses not required to provide a written report—i.e. expert witnesses not "retained or specially employed to provide expert testimony in the case or one[s] whose duties as the party's employee [do not] regularly involve giving expert testimony"—the "disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C).

As to timing, "[u]nless otherwise stated in the Scheduling Order issued pursuant to Fed. R. Civ. P. 16(b) . . . the plaintiff must . . . provide the disclosures required by Fed. R. Civ. P. 26(a)(2)(C) within 60 days after the Fed. R. Civ. P. 26(f) conference." LR 26.1(d), SDGa. Although the Scheduling Order in this case does not specifically set a

2

deadline for the disclosure requirements of non-retained experts under Rules 26(a)(2)(A) and (C), it does set March 19, 2012 as the last day for any experts retained by the Southards to furnish the written reports required by Rule 26(a)(2)(B). ECF No. 7 at 1. Since the scheduling order does not specify a deadline for Rule 26(a)(2)(A) and (C) disclosures, that deadline would be December 20, 2011—sixty days after the October 21, 2011 Rule 26(f) conference—pursuant to Local Rule 26.1(d). But State Farm concedes that March 19, 2012 was not only the deadline to furnish expert witness reports, but also was "the deadline for Plaintiffs to identify an expert," ECF No. 76, and the Southards do not argue for the earlier December 20, 2011 deadline. The Court will also consider the later March 19, 2012 deadline as the deadline for the Southards' disclosure of non-retained experts.

Because State Farm contends that both Capasso's and Martin's testimony as experts should be excluded for failure to timely identify them as such and to provide their written reports, the Court first determines whether either was the type of expert who must provide a report under Rule 26. The Court then addresses the timing issue.

### A. Rule 26(a)(2)(B)'s Written Report Requirement

Only experts who are "retained or specially employed to provide expert testimony" or those "whose duties as the party's employee regularly involve giving expert testimony" must provide expert reports. FED. R. CIV. P. 26(a)(2)(B). An expert whose "opinion testimony arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation" is exempted from Rule 26(a)(2)(B)'s written report requirement. *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011); *see also Vaughn v. U.S.*, 542 F. Supp.2d 1331, 1336-37 (S.D. Ga. 2008) (finding that a treating physician can be called to testify about the care he provided without having to produce an expert report).

Since 2004, Capasso has been the superintendent of SerClean, Inc., the company hired to remediate the Southards' home after the pipe burst. ECF No. 85 at 5-6. From the beginning, Capasso participated in most aspects of the water damage remediation in the Southards' home, including supervising the overall remediation process, interpreting reports and tests, assessing the type of damage that occurred, and determining what equipment was needed. ECF Nos. 77 at 47-50; 77-1; 77-2; 77-3 at 1-24. Capasso has never been retained or specially employed as an expert for any court case, and he has been deposed only once before. ECF No. 77 at 41-43.

Martin is an indoor environmental professional who "operate[s] a business known as Arthur V. Martin Associates . . . that assesses buildings for chemical, biological, and bacterial contamination, and . . . provide[s] protocols for resolving these types of contamination[]." ECF No. 105-1 at 1-2. Much like Capasso, Martin worked on the water damage remediation of the Southards home from the beginning, taking samples, conducting tests, preparing reports, and providing remediation protocols. ECF

3

Nos. 68 at 32-36; 68-1 at 8-50; 68-2; 68-3; 68-4 at 1-44. Martin has given perhaps "[t]hree or four" depositions, the last one being "[m]aybe a year and a half ago." ECF No. 68 at 24-25. He has also testified in court once, but that testimony was unrelated to mold or bacteria remediation issues. *Id.* at 30.

The Court finds that Capasso and Martin are the type of experts whose opinion testimony arises from their "ground-level involvement in the events giving rise to the litigation." *Bob's Discount Furniture*, 633 F.3d at 6. Neither was "retained or specially employed" for this case, and their jobs do not "regularly involve giving expert testimony." As such, neither was required to provide a Rule 26(a)(2)(B) written expert report to State Farm, and their testimony cannot be excluded for them not doing so.[1]

## B. Rule 26(a)(2)(A) and (C)'s Expert Disclosure Requirements

Exemption from Rule 26(a)(2)(B)'s written report requirement does not excuse the Southards from their duty to timely disclose "the identity of any [expert] witness [they] may use at trial." FED. R. CIV. P. 26(a)(2)(A). Nor are they excused from disclosing "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and . . . a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P 25(a)(2)(C); *see also Silverstein v. Proctor & Gamble Mfg. Co.*, 700 F. Supp. 2d 1312, 1319 (S.D. Ga. 2009) ("Rule 26(a)(2)(A) still requires disclosure of *any* witness who will offer expert opinion testimony under the Federal Rules of Evidence, regardless of whether the witness was specially retained for trial or not.") (emphasis in original). Here, the deadline for these disclosures was March 19, 2012.

### 1. Arthur Martin

In interrogatories dated November 22, 2011, State Farm requested the Southards disclose expert identities, subject matter of expert testimony, and the facts and opinions on which experts would testify. ECF No. 89-1 at 8-9. Although they objected to disclosure of experts at that particular time and stated that they would make "expert disclosures in accordance with the time frames set forth in the Federal Rules and in the scheduling order," the Southards replied, without waiving their objection, that "they expect[ed] to call witness[] Arthur Martin, a certified industrial hygienist . . . to testify in their action." ECF No. 86-6 at 4. The Southards further stated that Martin's

> opinions are based on his inspections of the Plaintiffs' home, sample results, and well recognized international and national standards and guidelines. He is expected to testify that the Plaintiff's home was

---

[1] The Court notes, however, that if the Southards seek to offer testimony from Capasso or Martin that goes beyond the observations and opinions obtained through their involvement in remediating the Southards' home, and instead, offers additional opinions developed for the purposes of trial, such testimony would trigger Rule 26(a)(2)(B)'s written report requirement, and would, therefore, be inadmissible because such reports were not timely provided. *See Bob's Discount Furniture*, 633 F.3d at 8 n.5; *Vaughn*, 542 F. Supp. 2d at 1337 n.3.

4

contaminated with bacteria caused by the black water flooding of their home. He provided a remediation protocol that complied with well accepted practices and national and international standards and guidelines. He provided this protocol to Mock Construction Company and understood that it was also provided to State Farm. Mr. Martin is also expected to testify that mold was not the initial problem with the home and that any resulting mold contamination occurred because of the delay in remediation. He is also expected to disagree with the conclusions reached by EFI Global, who was retained by State Farm to perform an inspection weeks after his inspection. His opinions are set forth in his initial report and subsequent letters that have all been produced in the initial disclosures and productions.

ECF No. 86-6 at 4.

On February 2, 2012, in an objection to a document request, the Southards identified Martin as "a fact witness who will also provide the Court with *expert testimony* on what he found in the house and why his recommended protocol was proper." ECF No. 30 at 1 (emphasis added).

The Court finds that these statements by the Southards, while not ideal, satisfy the expert disclosure requirements of Rule 26(a)(2)(A) and (C). *See Certain Underwriters at Lloyd's, London v. Belu*, Civil Action No. 1:08-CV-02482-RWS, 2009 WL 2848995 at *5 (N.D. Ga. Aug. 28, 2009) (holding that expert witness who was inadvertently not disclosed in initial disclosures but was later disclosed in response to interrogatories "was sufficiently disclosed such that [the opposing party] ha[s] not been prejudiced."). The Southards timely made State Farm aware that Martin would be called to provide expert testimony, and sufficiently described the subject matter, facts, and opinions about which he would testify. As such, the Court rejects State Farm's arguments that any of Martin's testimony should be excluded for failure to comply with Rule 26.

### 2. *David Capasso*

On the other hand, the Southards failed to identify Capasso as an expert witness (or as a witness at all for that matter) in their answers to State Farm's interrogatories, or by any other means, until they supplemented their interrogatory responses on May 18, 2012—some two months after the March 19, 2012 expert disclosure deadline and just days before the May 23, 2012 close of discovery *See* ECF Nos. 76 at 4; 85 at 11.

> If a party fails to provide information or [timely] identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including

> attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions....

FED. R. CIV. P. 37(c)(1).

The Southards claim that their own "notice of Capasso, a fact witness discovered in Mock's[2] deposition, as a may call non-retained expert came later, after [Capasso's May 2, 2012] deposition when he exhibited the breadth of his working knowledge used at the Southard home." ECF No. 149 at 10. After this apparent revelation, the Southards supplemented their interrogatory responses (over two weeks later) to add Capasso as an expert witness (only days before discovery closed). *See* ECF No. 85 at 11. However, the Southards also argue that their belated disclosure did not harm State Farm because State Farm had adequate notice of Capasso's involvement and expertise ever since Mock described both during his February 23, 2012 deposition. *See id.* at 8. Therefore, the Southards quibble that "State Farm cannot claim ignorance of Mr. Capasso's area of expertise, his involvement in Serclean's business, or his work at the Southard home" because State Farm "has known of Mr. Capasso's involvement in the Southard remediation and of Capasso's expertise in remediation since February" when Mock's deposition "establishe[d] State Farm's knowledge of David Capasso's special training, job duties, experience, and abilities." ECF No. 85 at 8, 11.

State Farm responds that the Southards "have offered no evidence or explanation that substantially justifies their failure to properly and timely disclose Mr. Capasso." ECF No. 89 at 17. State Farm goes on to contend that during Mock's deposition, he simply identified Capasso as his "job supervisor," and therefore, at the time of Capasso's deposition, "State Farm had no inkling that Plaintiffs would indentify Mr. Capasso as an expert, since Plaintiffs had not identified him at all in written discovery, and since the deadline for Plaintiffs to identify an expert . . . had passed on March 19, 2012 with no mention of [Capasso]." ECF No. 76 at 4. Consequently, State Farm claims that since it was not aware that the Southards intended for Capasso to be an expert witness, "State Farm will suffer prejudice should Plaintiffs be allowed to use him as an expert, including the expense of filing and litigating the instant motions and the lost opportunity to [adequately prepare for and] depose Mr. Capasso about his opinions because discovery has closed." ECF No. 89 at 20.

It is not lost on the Court that the Southards seek to have their proverbial cake and eat it too. They cannot sincerely seek to brand State Farm with knowledge of Capasso's expert status in February 2012, and at the same time seek to divest themselves of any such knowledge until May 2012. The Southards acknowledge that both parties found out about Capasso during the February 2012 deposition of Mock. ECF No. 92 at 4. If State Farm gained

---

[2] Alan Mock is a general contractor who owns SerClean, and employed Capasso during the remediation and repair of the Southards' home. *See* ECF Nos. 66 at 8-14; 86-6 at 4-5.

knowledge of Capasso and his alleged expertise at that time, the Southards necessarily did too, and thus were duty-bound to timely make all expert disclosures regarding Capasso required by Rule 26, regardless of State Farm's knowledge.

The duty to satisfy the Rule rested on the Southards, not State Farm. And this Court will not permit the Southards to shirk the rules by feigning ignorance while attempting to hold their opponent to a higher standard than they wish for themselves. Such tactics smack of gamesmanship.

The Court agrees with State Farm that the Southards have shown no substantial justification for their failure to properly and timely identify Capasso as an expert witness. State Farm incurred the expense of filing and litigating its motion to exclude Capasso as an expert witness based largely on the Southards' failure to properly and timely disclose Capasso pursuant to Rule 26. Although State Farm's contention that it had "no inkling" that Capasso would be identified as an expert is an overstatement, the Court still accepts State Farm's assertion that it lost the opportunity to adequately prepare for and depose Capasso as an expert because discovery has closed.

Even though the Southards' failure to timely disclose Capasso as an expert witness was neither substantially justified nor harmless, "the sanction of exclusion is not mandatory." *Collins v. United States*, No. 3:08-cv-923-J-32JRK, 2010 WL 4643279 at *5 (M.D. Fla. Nov. 9, 2010); *see also Prieto v. Malgor*, 361 F.3d 1313, 1318 (11th Cir. 2004) ("The district court may impose other appropriate sanctions in addition to or in lieu of the [Rule 37(c)(1)] evidentiary exclusion."). But in this case, although Capasso's expert testimony is important to the Southards' claims, it is not essential. Therefore, having considered the failure to satisfy Rule 26 here and the competing interests of the parties, the Court grants State Farm's motion and excludes David Capasso as an expert witness.[3]

### III. STATE FARM'S MOTION TO STRIKE AFFIDAVITS

The Southards attached many exhibits to their response to State Farm's motion for summary judgment. *See* ECF Nos. 93-119. Among these were affidavits from David Capasso, Arthur Martin, and Alan Mock. ECF Nos. 94-6; 94-2; 94-7. In response, State Farm moved to strike these three affidavits and the portions of the Southards' response to State Farm's motion for summary judgment that rely on these affidavits. ECF No. 145.

State Farm argues that these affidavits should be excluded because all three "contain inadmissible evidence, including inconsistent statements, statements made without personal knowledge, statements based upon hearsay, conclusory statements, and opinion testimony by persons not identified as expert witnesses." *Id.* at 2.[4]

---

[3] Since Capasso is excluded as an expert witness as a sanction under Rule 37 for violating Rule 26, the Court does not address State Farm's alternative argument that Capasso should be excluded as an expert witness pursuant to Rule 702 and *Daubert*. ECF No. 76 at 10-18.

[4] The portions of Capasso's affidavit to which State Farm objects pertain to his opinion that the water entered the Southards' home via "hydrostatic pressure" after having first come in contact with soil. 8-9; 67 at 87. Since the objected to portions of the affidavit are Capasso's expert opinion, and Capasso

7

State Farm further argues that the affidavits must be excluded in their entirety because the inadmissible portions of these affidavits are "so interwoven with admissible portions that they are virtually impossible to separate." *Id.* at 4.

At the outset, the Court notes that a motion to strike is not the proper procedural vehicle to challenge affidavits. *Jordan v. Cobb Cnty., Ga.*, 227 F. Supp. 2d 1322, 1346-47 (N.D. Ga. 2001) (noting that Rule 12(f) applies only to pleadings); *Newsome v. Webster*, 843 F. Supp. 1460, 1464 (S.D. Ga. 1994). Affidavits are not pleadings. *See* FED. R. CIV. P. 7 (defining pleadings as complaints, answers, and replies to counterclaims). The proper vehicle for challenging such affidavits therefore is to challenge the admissibility of the evidence contained in the affidavit. *Jordan*, 227 F. Supp. 2d at 1346-47. Notwithstanding this error, the Court turns to the merits of Plaintiffs' motion. *Id.* at 1347 (noting that courts "may consider only admissible evidence when deciding a summary judgment motion.").

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). A Court may disregard affidavit testimony that directly contradicts clear deposition testimony without giving a valid explanation. *McCormick v. City of Fort Lauderdale*, 333 F. 3d 1234, 1240 n.7 (11th Cir. 2003); *Van T. Junkins & Assocs. V. U.S. Indus.*, 736 F.2d 656, 656 (11th Cir. 1984) (holding that parties cannot create a genuine issue of material fact via an affidavit that contradicts, without explanation, earlier deposition testimony).

### A. Arthur Martin

State Farm objects to many portions of Martin's affidavit. ECF Nos. 145 at 4-7, 14, 16. The following are the allegedly deficient portions, numbered by the Court:

1) "State Farm has always found my past work to be reliable and I have had the opportunity to save State Farm a lot of money on some jobs that my testing showed was not as contaminated as first believed." ECF No. 94-2 at 3.

2) "I considered [m]y past experiences working with SerClean and Mock Construction, and knowing how careful they are about their work, I was confident enough to rely on the shorter time frame test." *Id.* at 8.

3) "I can't remember one of the SerClean or Mock Construction projects failing a clearance test. They do outstanding work." *Id.*

4) "It is my understanding that State Farm delayed authorization to remediate the home." *Id.* at 7.

5) "Cost is not my primary concern" *Id.* at 3.

6) "I was trying to keep costs down for State Farm." *Id.* at 8.

7) "My primary concern is that the family returns to a safe environment." *Id.* at 2-3.

---

has been excluded as an expert in this case, these portions of his affidavit are excluded.

8) "The amount of the bacteria or mold that is present can determine if it is harmful." *Id.* at 5.
9) "Bacteria are pathogenic, meaning able to cause disease." *Id.*
10) "I had assumed that the [negative bacteria] results [from the initial testing] had been sent to SerClean but cannot be certain of that." *Id.* at 3.
11) "[A] Category 3 water loss had occurred because the water that had entered the house had been in contact with the soil." *Id.*
12) "[T]he water that had entered the house had been in contact with the soil." *Id.*
13) "In my professional opinion, the most likely cause of the contamination in the Southard home was the Category 3 water loss because the water was not clean water when it entered the home, because the water had been in contact with the soil." *Id.* at 6.
14) "Gram stain testing is well accepted in the field to show whether bacteria is present or not and is commonly used to determine the presence or absence of bacteria." *Id.* at 4.
15) "In my experience, [gram stain testing] is the safer test to use for determining the presence or absence of bacteria because it captures a broader range of bacteria." *Id.*

Affidavit statements 1-7—opining about how reliable State Farm found Martin's past work; the quality of work done by SerClean and Mock Construction in the past; Martin's understanding that State Farm delayed authorization to remediate the Southards' home; and Martin's concerns as they relate to cost and safety—are no more than argumentative, self-serving statements and conclusions, many of which lack relevancy. They are, therefore, inadmissible. But if those statements are not so interwoven with the rest of Martin's affidavit as to warrant the exclusion of the entire affidavit, *So. Concrete Co. v. U.S. Steel Corp.*, 394 F. Supp. 362, 380-81 (N.D. Ga. 1975), the Court will use a "scalpel" to excise the improper portions rather than "a butcher knife" to hack out the affidavit as a whole *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315-16 (1st Cir. 2001).

Affidavit statements 9-15 pertain to Martin's expert opinion derived from his involvement in remediating the Southards' home. These statements are, therefore, entirely relevant, not interwoven with the inadmissible portions, and will not be excluded unless otherwise deficient.

State Farm contends that affidavit statements 8 and 9—that bacteria are pathogenic and that the amount of bacteria present can determine if they are harmful—contradict his deposition testimony. State Farm argues that Martin's previous deposition statements—in which he testified that he could not "*positively* say" that bacteria found in the Southard's home were pathogenic merely "based on the fact that there was a lot of bacteria there"—directly contradict his affidavit assertions. ECF No. 68-3 at 38-39, 45. (emphasis added).

The deposition statements are inconsistent with Martin's affidavit statements, but that does not settle the issue.

9

Instead, the Court must determine whether the statements were so inherently inconsistent that the affidavit irreconcilably conflicts with the deposition and therefore warrants exclusion. *See Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986). If the Southards offer an explanation for the discrepancy and the Court finds that the statements may be reconciled, then the discrepancy goes to the weight of the evidence, but the affidavit statements should not be excluded. *See id.*; *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1342-43 (11th Cir. 2000); *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 284 (S.D. Ala. 2006).

These statements do not rise to an excludable level of inconsistency. First, Martin's statement that "[b]acteria are pathogenic," is not wholly inaccurate or contradicted by his previous statements. Indeed, Martin's previous statements show that some bacteria are pathogenic; some are not. Although his later statement that "[b]acteria are pathogenic" is not specific, it does comport with his previous statements that some bacteria are pathogenic, without blatantly contradicting his statement that some are not.

Martin's affidavit statement about whether the amount of bacteria present can determine its harmfulness is more problematic. Once again, however, the affidavit statement does not blatantly contradict his deposition testimony that the amount of bacteria cannot *positively* establish whether it is harmful. It is logical, as the Southards point out, that although the amount of bacteria present cannot *positively* prove that the bacteria is harmful, the amount can still help in determining the likelihood of whether it is harmful. Read this way, the statements are not blatantly and inherently contradictory.

State Farm also contends that Martin's affidavit statement 10—that he assumed, but was not certain, that certain testing results were sent to SerClean—is inconsistent with his deposition statement that "[t]he only person [he] provided [the testing] information to was to Alan [Mock]." *See* ECF No. 68 at 180. Since Mock is an owner of SerClean, however, these statements certainly do not rise to the level of blatant inconsistency that would warrant exclusion.

State Farm next argues that Martin's affidavit statements 11-13—that water made contact with soil before it entered the Southards' home—is a conclusory assumption based on hearsay, not personal knowledge, and also contradictory to his prior deposition testimony that he could not remember if the hole was "patched or open or all the way down to the ground or not" when he was at the Southards' home. Martin states that his investigation, which employed a methodology and standards that are nationally recognized in the field and include various laboratory tests, led him to the opinion that the water that entered the Southards' home had been in contact with soil. *See* ECF No. 94-2 at 2-8.

Opinions reached by Martin based on his assessment of the home, which included laboratory tests, could be based on personal knowledge, and need not have been based on what other people told him about the damage. In addition, Martin would not

10

actually need to see the water in the process of contacting the soil to reach the conclusion, based on his investigation and testing, that such contact occurred. *See Daubert*, 509 U.S. at 592 ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.").

The Court, therefore, will not exclude Martin's affidavit statements 8-13. The remaining affidavits statements that State Farm objects to (14-15)—concerning the reliability of gram stain testing—strike more at the reliability of the methodology employed by Martin, and therefore, will be addressed in the Court's *Daubert* analysis below.

### B. Alan Mock

State Farm also attacks Mock's affidavit statements as conclusory, irrelevant, and lacking in probative value and evidentiary support. ECF No. 145 at 10-12. State Farm argues that the following affidavit statements of Mock are inadmissible:

1) "State Farm typically pays the overhead and profit as invoiced." ECF No. 94-7 at 2;
2) "When the contents are removed, they must be stored somewhere and SerClean has a climate controlled warehouse where the contents are stored. The charge of $1.40 a square foot of warehouse space is usual and customary. This charge has often been charged by SerClean and paid by State Farm and other insurance carriers." *Id.*
3) "Profit and overhead for this work are commonly accepted items of charges in the remediation industry." *Id.*
4) "During the Southard job, State Farm delayed the repair of the Southard home." *Id.*
5) "State Farm refuses to accept responsibility for failures to authorize adequate drying or water extraction, remediation, or home repair." *Id.*
6) "This motivation appears to differ from State Farm motivations, which appears to be based on controlling costs." *Id.*
7) "During 2010, Affiant became aware that State Farm representatives were attempting to steer SerClean customers away from SerClean and Mock Construction and towards contractors who had contracted to be in State Farm's Premier Service program." *Id.* at 3.

The Court finds that all of these statements are either irrelevant or self-serving, argumentative, and conclusive. As such, all of them are inadmissible. Moreover, unlike the inadmissible portions of Martin's affidavit, the inadmissible portions of Mock's affidavit come from over half of the total paragraphs that make up the affidavit and directly relate to the primary subject matters discussed throughout the affidavit. The Court finds that these inadmissible portions are so interwoven with the rest of the affidavit, that Mock's affidavit should be excluded in its entirety. *So. Concrete*, 394 F. Supp. at 380-81.

## IV. *DAUBERT* ANALYSIS

Federal Rule of Evidence 702[5] controls the admission of expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993). *Daubert* made clear that Rule 702 compels the Court to serve as gatekeeper, determining the admissibility of expert evidence. *See id.* at 589; *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The burden of establishing the admissibility of expert testimony rests on the proponent of the testimony. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002). The Court notes, however, that "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. advisory committee note, 2000 amend. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. The Court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

### A. Arthur Martin

State Farm argues that Martin's opinion testimony "is based on unreliable methodology and is not sufficiently reliable under the constructs of Rule 702 and *Daubert.*" ECF No. 145 at 20. One of State Farm's primary arguments on this point is that Martin assumes the application of Microban—and antimicrobial product—in the Southards' home caused his initial sewage screen of the Southards' home to come back negative for bacteria, whereas the gram stain test that he conducted some ten days later came back positive for bacteria. *Id.* at 20. State Farm argues that Martin fails to adequately explain why these two test results differed *Id.*

State Farm also contends that the gram stain test is simply not reliable, and Martin's reliance on that test, therefore, renders his opinion and certain of his affidavit statements regarding gram stain testing deficient under Rule 702 and *Daubert*. *Id.* at 22. State Farm bases this argument on Witten's deposition, where she stated that "[t]he gram stain sampling and analysis that Mr. Martin conducted is typically not conducted in association with the indoor air quality inspection regarding determination of category of water sources." ECF No. 67-1 at 43.

The Southards respond that Martin has forty years of professional experience in this line of work, and that his affidavit, among

---

[5] Federal Rule of Evidence 702 provides:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

12

other things, explains in detail what he based his opinion on, references the industry standard in support of his methodology, and explains why and how gram stain testing is used. ECF No. 149 at 10. The Southards also point out that Martin's deposition testimony suggested the routine use of Microban prior to his initial tests, and that the contractor's testimony established that Microban was applied in the Southards' home before Martin's initial testing in this case. *Id.* at 11.

The record shows that Martin has been trained in sampling for mold and bacteria—including swab sampling, tape lift sampling, and collecting air samples—since the early 1970s. ECF No. 68 at 16-17. He did this "[s]ame type of work" for many years before he incorporated his own business in 2002, Arthur V. Martin Associates Inc., which tests for mold and bacteria and prepares remediation protocols. *Id.* at 19-20, 22. Martin testifies that he is familiar with the Institute of Inspection Cleaning and Restoration Certification and follows its Standard and Reference Guide for Professional Water Damage Restoration and Mold Remediation (IICRC S500 & S520), which are "an accepted standard by the industry and by insurance companies." *Id.* at 30-31.

State Farm's objections to Martin's testimony rest in the main on its own expert's opinion testimony. But expert pontification does not convert opinion to fact. *Slaughter v. So. Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990) ("[W]ithout more than credentials and subjective opinion, an expert's opinion that 'it is so' is not admissible."). Witten's statement that the gram stain testing used by Martin was insufficient cannot negate Martin's testimony out of hand. At best, Witten's testimony creates an issue of weight, not an issue of admissibility, as to Martin's testimony. Regardless, the Court will not play favorites with expert testimony and hold that one renders the other inadmissible under Rule 702 and *Daubert*. *See McGarity v. FM Carriers, Inc.*, 4:10-CV-130, 2012 WL 1028593 (S.D. Ga. Mar. 26, 2012) ("Conflicting expert witness testimony is not grounds to exclude—the identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination and does not render expert testimony inadmissible under *Daubert*." (citing *Daubert*, 509 U.S. at 596)); *Smith v. Ortho Pharmaceutical Corp.*, 770 F. Supp. 1561, 1568 (N.D. Ga. 1991) ("[I]n the context of summary judgment the court cannot simply accept the views of one party's experts concerning the qualifications of the experts offered by the party opponent.").

Here, the Southards have done enough—by submitting Martin's statements about his experience, industry standards, the use and reliability of gram stain testing, and his professional opinion derived from those and other tests on the Southards' home, as well as his personal observations of the home—to meet their burden of demonstrating the admissibility of Martin's testimony as expert opinion. *McGarity*, 2012 WL 1028593 at *6 (finding expert qualified based on experience and sufficiently reliable methodology). The better route for State Farm to challenge Martin's opinion testimony is to vigorously cross-examine him and present contrary evidence,

13

including the testimony of its own expert. The Court therefore rejects State Farm's argument that Martin's opinion testimony is not sufficiently reliable under Rule 702 and *Daubert*.

### B. Elizabeth Witten

The Southards also filed a motion in limine seeking to exclude certain opinions of Witten, State Farm's expert witness, as inadmissible under *Daubert* and the expert testimony evidentiary rules, as well as relevance, confusion, undue prejudice, and hearsay. *See* ECF No. 153. In particular, the Southards seek to exclude Witten's opinions on the extent of mold contamination, biological growth, decay, the source of bacteria in the Southards' home, bacteria filtering in from the concrete slab, and certain criticisms of Martin's tests. *See id.* State Farm responds by pointing out that the Southards' motion is completely devoid of supporting case law except for that cited for the legal standard, and contends that Witten's testimony is not only reliable under *Daubert* and Rule 702, but entirely relevant to the substantive issues in this case. *See* ECF No. 155.

The Court agrees with State Farm. Witten, like Martin, is qualified as an expert in this case and State Farm has shown that her opinion testimony is sufficiently reliable to be admitted. *See* ECF Nos. 67 to 67-4 (showing Witten is lead microbiologist for EFI Global Atlanta, a certified microbial consultant, and a certified microbial remediation supervisor, and detailing her education and experience, and the industry standards and testing methods on which she based her report and remediation protocol). Like State Farm, if the Southards seek to challenge their opponent's expert, they may do so through vigorous cross-examination and by presenting contrary evidence. *Daubert*, 509 U.S. at 595. The Southards' other arguments seeking to exclude Witten's testimony are equally meritless. Accordingly, the Southards' motion in limine to exclude certain opinions of Elizabeth Witten, expert witness for State Farm is ***DENIED***.

## V. MOTION FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008). Courts, moreover, may consider all materials in the record, not just those cited by the parties. FED. R. CIV. P. 56(c)(3).

The moving party "bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Reese*, 527 F.3d at 1268 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The nonmoving party then "may not rest upon the mere allegations or denials of

[their] pleading[s], but . . . must set forth specific facts showing that there is a genuine issue for trial." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material only if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248.

### A. Breach of Contract Claim

In its motion for summary judgment, State Farm contends that the Southards' breach of contract claim and bad faith claim both fail as a matter of law. ECF No. 75-1 at 10-19. The Magistrate put it best in his June 14, 2012 order when he noted, "[t]he parties' dispute is over bacteria. . . . Plaintiffs say bacteria was present, while State Farm says not (it is undisputed that bacteria is *always* present in homes but only some strains, as tied to a covered occurrence, trigger coverage)." ECF No. 73 at 2. If the Southards fail to show that the water leak caused a bacterial contamination triggering additional coverage (i.e. a Category III loss), then the policy's $10,000 mold/fungal limitation applies; if the Southards show that such bacteria was detected, then State Farm would be liable for necessary bacterial remediation. *See* ECF No. 15-3.

State Farm issued $95,781.10 in indemnity payments to the Southards ($62,757.84 for water damage to real property; $12,433.93 for cleaning of personal property; $10,589.33 for additional living expenses; and $10,000.00 for mold remediation (per the policy limit)). ECF No. 154-1 at 2. State Farm argues that it is not obligated to pay for the additional remediation and repairs that the Southards seek in this suit because the mold limitation applies to those expenses. State Farm argues that no genuine issue of material fact remains as to the Southards' breach of contract claim because (1) what occurred was a clean water supply leak; (2) the water damage resulted in mold; (3) State Farms' expert found no evidence of the type of "black water" that would warrant additional coverage for bacteria remediation; and (4) the Southards have no expert testimony to rebut these findings and prove that bacterial contamination occurred. ECF Nos. 75-1 at 13-14; 146 at 2-6, 11-12.

The Southards respond that the mold limitation does not apply here because mold was only a minor problem in the Southards' home, and the major problem in need of repair was a Category 3 water loss requiring bacterial, not mold, remediation because the leaking water contacted soil before it entered the Southards' home. ECF No. 152 at 14-15. The Southards further contend that State Farm's delay in approving remediation coverage exacerbated the level of contamination, and made State Farm liable for this subsequent damage. *Id.* at 15, 18-19. The Southards contend that the testimony of Martin, as well as Mock, both create genuine disputes of material fact as to whether coverage should have extended to all of the remediation work done on the Southards' home.

15

The Court agrees with the Southards that a genuine dispute remains as to whether the water caused a bacterial contamination requiring remediation that would be covered under the policy. Martin—the Southards' qualified expert, using a methodology deemed sufficiently reliable—has testified that based on his observations, investigation, and testing, it is his opinion that "a Category 3 water loss had occurred because the water that had entered the house had been in contact with the soil. By definition under IICRC S500, water that comes in contact with the ground is not a Category 1 claim." ECF No. 94-2 at 3. In his deposition, Martin also testified that based on his inspection at the Southards' home, it was his opinion that the pipe broke under the slab and the water came in contact with ground underneath before percolating up through the slab into the Southards' home, and it was "obvious" to him that this was a "blackwater" claim. ECF No. 68-2 at 11-14. Martin's

> test results came back positive and told [him] that the slab had become contaminated with bacteria. It . . . remains [his] opinion that, more likely than not, the Category 3 water intrusion contaminated the slab and that the slab needed to be treated as a Category 3 bacterial claim. Under the IICRC S500, the presence of bacteria after a water loss requires a Category 3 remediation.

ECF No. 94-2 at 4.

These statements from his affidavit are consistent with his deposition testimony. *See* ECF No. 68-2 at 14-15. Martin's opinion is that the most likely source of the bacteria in the Southards' home was the water leak; Witten's opinion is that the most likely source was dirt from the workers' shoes, dust in the house, and/or faulty sampling by Martin. *See* ECF Nos. 94-2 at 7; 97-1 at 31-32. Such contradictory evidence and expert opinions presents a genuine dispute. The Court will not usurp the jury's role as fact finder. Accordingly, State Farms' motion for summary judgment as to the Southards' breach of contract claim is ***DENIED***.

### B. Bad Faith Claim

However, the Court agrees with State Farm that the Southards' claim for bad faith penalties fails as a matter of law. Under O.C.G.A. § 33-4-6, an insurer can be liable to an insured for bad faith penalties if, inter alia, "a finding has been made that [the insurer's] refusal [to pay for a covered loss] was in bad faith." The insured bears the burden of showing that the insurer's refusal to pay the claim was made in bad faith. *Allstate Ins. Co. v. Smith*, 266 Ga. App. 411, 413 (2004).

Under Georgia law, bad faith is defined as "any frivolous and unfounded refusal in law or in fact to comply with the demand of the policy to pay according to the terms of the policy." *Royal Ins. Co. v. Cohen*, 105 Ga. App. 746, 747 (1962). "Penalties for bad faith [and attorney fees] are not authorized where the insurance company has *any* reasonable ground to contest the claim and where there is a disputed question of fact." *Rice v. State Farm Fire and Cas. Co.*, 208 Ga. App. 166, 169 (1993) (emphasis added).

As discussed *supra*, a genuine dispute exists as to whether the remediation of the Southards' home was primarily fungal or bacterial in nature, and thus whether State Farm was or was not obligated to pay for the additional expenses sought by the Southards in this action. "[I]t is the very fact that certain factual issues regarding the merits of a claim are in genuine conflict that causes there to be no conflict, as a matter of law, whether an insurance company had reasonable grounds to contest a particular claim." *Rice*, 208 Ga. App. at 169. State Farm partially paid for the loss at issue, but, based on the investigation of its expert, denied full payment because it found that "the covered portions of this water loss were fungal in nature and any bacteria that was in the house was not from a covered cause of loss, [and] thus not covered." ECF No. 71-2 at 31; *see Shaffer v. State Farm Mut. Auto. Ins. Co.*, 246 Ga. App. 244 (2000) (holding that summary judgment in favor of insurer on plaintiff's O.C.G.A. § 33-4-6 claims was proper because insurer showed reasonable ground for paying only part of the plaintiff's medical bills where insurer submitted those bills for expert review, and the expert found them to be for unnecessary treatment and excessive).

After careful consideration of the evidence and all of the arguments of the parties, the Court finds as a matter of law that State Farm had reasonable grounds to contest the Southards' claim and to request supporting documentation for any part of the Southards' claim. Accordingly, State Farms' motion for summary judgment as to the Southards' bad faith claim is **GRANTED**.

## VI. CONCLUSION

Based on the foregoing, State Farm's motion to exclude David Capasso as an expert witness, ECF No. 76, is **GRANTED**.

The Court treats State Farm's motion to strike the affidavits of David Capasso, Arthur Martin, and Alan Mock as a challenge to the admissibility of the evidence contained in those affidavits. That motion, ECF No. 145, is **GRANTED IN PART AND DENIED IN PART**. The objected to portions of Capasso's affidavit are **INADMISSIBLE** because they offer expert opinion but Capasso has been excluded as an expert witness. For the reasons stated above, Martin's affidavit statements 1-7 are **INADMISSIBLE**, and Martin's affidavit statements 8-15 are **ADMISSIBLE**. The objected to portions of Mock's affidavit are **INADMISSIBLE**, and Mock's affidavit is **EXCLUDED IN ITS ENTIRETY**.

State Farm's request to exclude the opinion testimony of Martin as insufficiently reliable under Rule 702 and *Daubert*, ECF No. 145, is **DENIED**. Likewise, the Southards' motion to exclude certain opinions of Witten, State Farm's expert witness, ECF No. 153, is also **DENIED**.

State Farm's motion for summary judgment as to the Southards' breach of contract claim is **DENIED**, but State's Farm's motion for summary judgment as to the Southards' bad faith claim is **GRANTED**. ECF No. 75.

This 17th day of January 2013.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA